NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ERIC R., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, D.R., G.R.,
*Appellees.*

No. 1 CA-JV 17-0445
FILED 4-3-2018

Appeal from the Superior Court in Maricopa County
No. JD 29749
The Honorable Jeanne M. Garcia, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Sandra L. Nahigian
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Patricia A. Orozco[1] delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Maria Elena Cruz joined.

---

**O R O Z C O**, Judge:

¶1        Eric R. (Father) appeals the court's termination of his parental rights to his daughter, D.R., and his son, G.R. (collectively, the children). For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        Both children were born substance exposed to Mother and Father.[2]  In January 2015, the Arizona Department of Child Safety (DCS) initiated dependency proceedings as to Father, alleging abuse or neglect due to substance abuse and inappropriate care and supervision.  The court found the children dependent as to Father after Father waived his right to contest the dependency allegations.  A case plan was set for family reunification concurrent with severance and adoption.

¶3        DCS provided Father reunification services including referrals to Terros and TASC, parent aide services and visitation.  Initially, Father did not fully participate in these services.  In March 2016, DCS requested and the court ordered the case plan to be changed to severance and adoption.  DCS filed a motion for termination of parental rights as to Father and the children.  DCS alleged Father's neglect of the children, Father's chronic abuse of dangerous drugs rendered him unable to discharge his parental responsibilities, and the length of time in out of home placement, as grounds for termination.

---

[1]      The Honorable Patricia A. Orozco, retired Judge of the Arizona Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2]      The court terminated Mother's rights as part of the same proceedings, but she is not a party to this appeal.

¶4 After a six-day contested severance trial, the court took the matter under advisement and terminated Father's rights due to neglect, prolonged substance abuse, and length of time in out of home placement. The court also found DCS proved by preponderance of the evidence termination of Father's parental rights was in the children's best interests. Father timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes (A.R.S.) sections 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).[3]

## DISCUSSION

¶5 Father argues the court erred in terminating his parental rights on the grounds of the length of time in out of home placement, neglect, and substance abuse. Father further contends that terminating his rights is not in the children's best interests because "he can be the father that the children deserve."

¶6 A court may terminate parental rights if it finds at least one of the statutory grounds in A.R.S. § 8-533(B) is established by clear and convincing evidence. *Kent K. v. Bobby M.*, 210 Ariz. 279, 280, ¶ 1 (2005). The court must also find by a preponderance of the evidence that termination is in the child's best interests. *Id.* at 284, ¶ 22. We view the evidence in the light most favorable to sustaining the court's findings, *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2 (App. 2008), and we will not reverse an order terminating parental rights unless the court's factual findings are unsupported by any reasonable evidence. *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2 (App. 1998).

## I.    Statutory Grounds for Termination of Father's Parental Rights

¶7 A parent's rights can be terminated when the parent has a history of chronic drug abuse, resulting in an inability to discharge parental responsibilities. A.R.S. § 8-533(B)(3). Severance on this basis is appropriate when the court also finds "there are reasonable grounds to believe that the condition will continue for a prolonged and indeterminate period." *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 15 (App. 2010). Additionally, the court must also find that DCS "made reasonable efforts to reunify the family or that such efforts would have been futile." *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005).

---

[3]    We cite to the current version of applicable statutes absent any change material to this decision.

A.    History of Chronic Drug Abuse

¶8          Father argues the court erred in concluding that he has a history of substance abuse, "which would continue for an indeterminate period and prevent him from being able to parent his children." Additionally, he contends by completing inpatient treatment and his desire to maintain his sobriety demonstrate he is "amenable to rehabilitative services."

¶9          There is evidence in the record supporting the court's finding that Father had a history of chronic substance abuse.  Father conceded that he had a long history of substance abuse issues starting at 17 years of age. Moreover, he acknowledged he could not recall a time in life where he had a "significant" gap of sobriety and testified his "longest period" of sobriety was for one month in May 2016.

¶10         The DCS caseworker testified there were continued concerns of substance abuse with methamphetamine and heroin, housing, and employment.   Moreover, she stated Father was in jail during the dependency proceedings, had not completed the psychological evaluation, and other services were closed out unsuccessful due to lack of participation. Upon Father's release from jail, the DCS caseworker stated she discussed with Father that he would be required to test at TASC, engage in community parenting classes, and would receive a referral for a case aide. Once services were in place Father was consistent with visits, testing with TASC and he completed an inpatient treatment program.  However, Father relapsed in March 2017 when he tested positive for methamphetamines.

B.    Inability to Discharge Parental Responsibilities

¶11         Pursuant to A.R.S. § 8-533(B)(3) "a parent is unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period."  When determining whether a parent can discharge parental responsibilities, the court must consider how the substance abuse hinders the parent's ability to effectively parent. *Raymond F.*, 224 Ariz. at 377-78, ¶ 19.  In making this finding, the court has flexibility to consider the circumstances of each case. *Maricopa Cty. Juv. Action No. JS-5894*, 145 Ariz. 405, 409 (App. 1985).

¶12 When the children were removed from the home in January 2015, Father was offered visitation, Terros, and TASC. He was going through Community Bridges and DCS also provided parent aide services and referred Father for a psychological evaluation. Father did not consistently participate in the services and the DCS case manager testified that other than a few visits, "he was not involved with [the children]." In 2016, DCS suggested to Father inpatient treatment; however, overall, the evidence supports that Father did not make progress towards reunification. Father did not actively participate in services as he missed many drug tests, had a positive result in February 2016, and did not show a commitment to remain sober. Father also testified his burglary convictions were a result of funding his heroin habit.

¶13 Father conceded he spent some time homeless from April 2015 until July 2016, and provided testimony he had not seen his children for approximately five months because he had "some relapses [and his] mental state and condition was deteriorating." He also stated he absconded from his probation and adopted a homeless lifestyle despite the fact his children had been in DCS custody since January 2015 and stated that he did not participate in services prior to July 2016 because of substance abuse.

¶14 Father also admitted he abused heroin daily and used other opiate prescription pills. Moreover, when the court asked Father whether he received any treatment for his heroin use, Father responded "[n]umerous." Father asserted his "last" treatment to address the heroin use was April 2015. Although Father alleged he did not relapse with opiates after treatment, he admitted to using methamphetamine daily between April 2015 and July 2016 despite the children being in DCS custody. Father testified while in jail he abstained from drugs and although he participated in some programs during incarceration, he was not successful in others. Father stated he did not participate enough nor take advantage of the services offered by DCS. He would have moments of brief sobriety and then he would relapse. Father stated he used "substances throughout the duration of DCS's involvement in [his life] and [his] children's life." DCS offered services for him after the children were removed from his custody and he stated he "[f]oolishly did not engage in those services."

¶15 After inpatient treatment, Father transitioned to intensive outpatient services in January 2017. Father stated that during this transitional living side of the program, he was gainfully employed, no longer homeless and living a more appropriate and responsible lifestyle. Father stated, "[t]here's no way [he] can go back to [his previous lifestyle],"

and he was participating in an intensive outpatient program, meeting with his sponsor, and engaged in a 12-step program. Despite these successes Father testified he was not ready to have his children return to him. Additionally, DCS provided testimony of the lack of communication with Father while he was in jail and were unaware of Father sending any cards, gifts, or letters. The DCS caseworker opined the substance abuse prohibited Father from parenting.

¶16        We have determined that a court may grant severance if a parent "substantially neglected to remedy [his] addiction during more than a year of out-of-home placement . . . even though the parent eventually begins a successful recovery before the severance hearing." *Maricopa Cty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (1994). Although Father contends he is "amenable to rehabilitative services," the children have been in care for over two and half years, and the evidence supports the court's conclusion that Father's substance abuse affects his ability to parent and provide the basic needs for his children.

C.    Reasonable Belief that Chronic Drug Abuse Will Continue

¶17        DCS must also prove that there is a reasonable belief that drug abuse "will continue for a prolonged and indeterminate period." *Raymond F.*, 224 Ariz. at 378, ¶ 25. Evidence sufficient to support a finding that a substance abuse issue will continue may include the parent's history of use and failure to complete or engage in offered services. *Id.* at 378-79, ¶¶ 26-27. A parent's failure to abstain from substances despite a pending severance "is evidence [the parent] has not overcome [the] dependence on drugs." *Id.* at 379, ¶ 29.

¶18        Father argues that his completion of an inpatient program and his desire to maintain sobriety "demonstrate that he is 'amenable to rehabilitative services.'" *See Jennifer G.*, 211 Ariz. at 453 n.3, ¶ 12 (noting under § 8-533(B)(3) the inherent requirement that a condition is shown not to be amenable to rehabilitative services applies also to termination of rights on the grounds of substance abuse). Despite Father's sobriety in a custodial setting and his participation in an inpatient treatment facility, DCS provided evidence that Father does not have a long length of sobriety nor did he participate in services consistently, despite the children being in care since January 2015. Services offered to Father included parent aide, urinalysis testing, substance abuse treatment, a psychological evaluation and a case aide for visits.

¶19        Father completed substance abuse treatment in January 2017 and parenting classes through Child Crisis Arizona in October 2016. However, Father relapsed in March 2017.  The relapse was a concern for DCS because Father would have to start over with substance abuse treatment and he was residing in a half-way house.

¶20        After Father's relapse, the DCS case manager testified Father was engaging in some services and returned to treatment. Father also testified his relapse was a consequence of "bad decisions" and a "moment of weakness."  He also conceded despite the fact his substance abuse was a major issue in this case, he still chose to use and he put drugs before his children.  Father also agreed that it was not fair for his children to wait for him through the process of sobriety and recovery.

¶21        Because Father relapsed during a termination proceeding, there is a reasonable belief that Father will abuse drugs for a prolonged and indeterminate period.  *See Raymond F.*, 224 Ariz. at 378-79, ¶¶ 25, 29 (following a statutory timeline is required because "children should not be forced to wait for their parent to grow up" when a parent consistently fails to abstain from drugs and alcohol) (quoting *In Interest of N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998)). Moreover, Father testified he cannot guarantee he will not relapse again.  Consequently, although recognizing Father's sincere efforts, the court correctly concluded, "Father's substance abuse will continue given his lengthy history of abusing and the short term sobriety established thus far."

¶22        Because we accept the court's findings of fact unless clearly erroneous, we find the court did not err in severing Father's rights as to the children pursuant to A.R.S. § 8-533(B)(2). *See JS-501568*, 177 Ariz. at 576. Additionally, because clear and convincing evidence in the record supports termination based on the grounds of substance abuse, we need not address the other grounds alleged. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251, ¶ 27 (2000) (holding if reasonable evidence supports termination on any one statutory ground, the appellate court need not consider challenges pertaining to other grounds).

## II.        Best Interests Determination

**¶23**        A court's best interests determination must consider whether "the child[ren] will benefit from termination of the relationship or that the child[ren] would be harmed by continuation of the relationship." *James S. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 351, 356, ¶ 18 (App. 1998). "[A] preponderance of the evidence must demonstrate that termination is in the best interests of the child[ren]." *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

**¶24**        Father argues the State failed to prove by preponderance of the evidence that his termination of parental rights was in the children's best interests.  He contends that severance of his rights is not in the children's best interests because not only can he "be the Father that the children deserve" but he can also "offer his children a stable home that is free of substances."  However, in a best interests analysis, a "court must balance [a] diluted parental interest against the independent and often adverse interests of the child in a safe and stable home life." *Kent K.*, 210 Ariz. at 286, ¶ 35.  Contrary to Father's arguments, Father testified he has been uninvolved with the children because "a homeless, drug-addicted person is not [in his] children's best needs—best interests at all . . ." and that it was in his "children's best interest to find permanency sooner than later."  Although Father argues he can offer his children a substance-free, stable home, Father also testified he cannot guarantee he will not relapse again.

**¶25**        When evaluating a child's best interests, the court may consider if "an adoptive placement is immediately available," whether the existing placement is meeting the child's needs, and whether the child is adoptable. *Raymond F.*, 224 Ariz. at 379, ¶ 30.  In June 2017, DCS presented evidence that the children were in a licensed foster home, placed together and that they were doing well, thriving, and having all their needs met.  Moreover, because the children were young, they had been in care for almost two and half years, and they needed stability and permanency, the DCS caseworker opined severing parental rights was in the children's best interests.  DCS's position was they still had concern regarding Father's substance abuse despite showing some sobriety because Father relapsed and he did not have stable housing.  If the court granted termination, the plan was for the current placement to adopt both children.

**¶26**      Subsequently, the court found that the children's placement was providing the children with a loving and nurturing environment where they were thriving. The court also determined that although a maternal relative was approved, the children have been with the foster family since June 2016. Because the children are adoptable, the court concluded, "termination of [Father's] rights would allow the children to move forward with permanency." *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179-80, ¶ 21 (App. 2014) (finding that stability and permanency support a best interest finding). Because substantial evidence in the record exists to support the court's best interests finding, we find no error.

**CONCLUSION**

**¶27**      For the foregoing reasons, we affirm the court's order terminating Father's parental rights.



AMY M. WOOD • Clerk of the Court
FILED: AA

9